UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN ESTRADA and OMAR ESTRADA, individuals and acting in the interest of other current and former employees,<br><br>Plaintiffs,<br><br>vs.<br><br>MB COATINGS, INC. a California Corporation, HOWARD BUILDING CORPORATION, a California Corporation, DEB CONSTRUCTION, LLC, a California Limited Liability Company, FAR WEST CONTRACTORS CORP., a California Corporation, CLUNE CONSTUCTION, MIKE BARTLE, an Individual, AMANDA BARTLE, an Individual, and DOES 1 through 20,<br><br>Defendants. | Case No. 8:22-cv-01427-JDE<br><br>**ORDER CONDITIONALLY GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT (Dkt. 71) AND SETTING A FINAL FAIRNESS HEARING ON JANUARY 30, 2025 at 10:00 AM** |

Before the Court is Plaintiffs Martin Estrada and Omar Estrada's ("Plaintiffs") renewed Motion for Preliminary Approval of Class Action

Settlement. Dkt. 71 ("Motion" or "Mot."). Plaintiffs ask the Court to (1) grant preliminary approval of the class and collective settlement; (2) grant conditional certification of the settlement class and collective; and (3) approve and direct distribution of the Class and Collective Notice and related materials to the Class and Collective; and (4) appoint the Class Representative, Class and Collective Counsel, and Settlement Administrator. Mot. at 2. Defendants MB Coatings, Inc., Howard Building Corporation, DEB Construction, LLC., Far West Contractors Corp., Clune Construction, Mike Bartle, Amanda Bartle (collectively "Defendants"), do not oppose the Motion.

The Court has reviewed the Settlement Agreement and Release (the "Settlement") and is familiar with the claims and proceedings to date in this matter. For purposes of this Order, capitalized terms used below have the meaning ascribed to them in the Settlement, unless otherwise defined.

For the reasons stated below, the Court **<u>CONDITIONALLY GRANTS</u>** Plaintiffs' Motion and preliminarily approves the settlement.  As explained more fully below, Plaintiffs must submit a revised notice packet **within fourteen (14) days** of the issuance of this Order. The Court SETS a Final Fairness Hearing and Final Approval Hearing for January 30, 2025.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2022, Plaintiffs filed a Complaint alleging a class and Federal Labor Standards Act ("FLSA") collective action. Dkt. 1. On October 27, 2022, Plaintiffs filed a First Amended Complaint against Defendants alleging (1) failure to pay overtime under the FLSA; (2) failure to pay contractual California wages; (3) failure to pay California minimum wage in violation of Cal. Lab. Code § 1197 et al.; (4) failure to pay California overtime

in violation of Cal. Lab. Code § 510; (5) failure to reimburse in violation of Cal. Lab. Code § 2802; (6) meal period violations under Cal. Lab. Code §§ 510, 226.7; (7) rest period violations under Cal. Lab. Code § 226.7; (8) wage statement and record keeping violations under Cal. Lab. Code §§ 226, 1174 et al.; (9) failure to pay all California wages owed upon termination in violation of Cal. Lab. Code § 203; and (10) violation of the Unfair Competition Law under Cal. Bus. & Prof. Code §§ 17200 et seq. Dkt. 19 ("FAC").

In the FAC, Plaintiffs allege Defendants maintained illegal policies or practices that required employees to drive to alternative worksites in their personal vehicles outside of their normal commute, to stop and load materials in their personal vehicles before and after leaving worksites, and to undergo COVID-19 screenings, all without compensation for time spent or reimbursement for mileage. FAC at 9-10. Plaintiffs also assert Defendants engaged in illegal meal and rest period policies and practices, where employees routinely had late and interrupted meal periods and were only instructed to take one rest break even though employees worked eight or more hours in a day, without compensation in lieu of rest breaks or incomplete or late meal breaks. Id. at 10-11. Additionally, Plaintiffs allege Defendants, under their record keeping policies, willfully provided unlawful wage statements that did not indicate all hours worked or premium payments for late or interrupted meal and rest periods. Id. at 11.

Plaintiffs' Counsel interviewed Plaintiffs and conducted factual research prior to commencing the action, and after commencing this action, conducted written discovery and Defendants produced documents including payroll and timekeeping records for the Class. Dkt. 71-2, Declaration of Stan Mallison ("Mallison Decl.") ¶¶ 15, 16. Plaintiffs' Counsel then engaged data base expert Aaron Woolfson to review and analyze these records and assemble a damages

3

model that was presented to Defendants at mediation. Id. ¶ 16. On January 22, 2024, the parties participated in a mediation session with the Honorable Victor B. Kenton (Ret.) and reached an agreement in principle through a mediator's proposal (id. ¶ 17), which they then memorialized in a complete, long-form settlement agreement (Dkt. 66-3).

On March 25, 2024, Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement. Dkt. 66. The Court held a hearing on April 26, 2024, requesting clarification regarding the estimated full value of the claims were the case to succeed at trial, and raising concerns about the proposed notice's failure to address the FLSA collective action or hybrid nature of the settlement. Counsel for Plaintiffs moved to withdraw the Motion without prejudice (Dkt. 70), and on May 17, 2024, Plaintiffs filed a renewed Motion for Preliminary Approval of Class Action Settlement. Dkt. 71. The Court set a hearing date and alerted the parties to continuing issues, such as the apparent lack of separate consideration for opting in to the FLSA claim, and inadequate explanation in the proposed notice regarding the options and release of claims with respect to both the Rule 23 Class and FLSA Collective. Plaintiffs filed an Amended FLSA Collective Action and Class Action Settlement Notice on June 6, 2024. Dkt. 74. At the hearing, on June 6, 2024, the Court and counsel discussed the renewed Motion and amended proposed notice, which assigned separate consideration for opting in to the FLSA claim and added some additional language about the options for FLSA Collective and/or Class Members. The Court noted, however, the amended proposed notice continued to contain language only applicable to the Class, and the parties had not amended their settlement to reflect the separate settlement shares for the Collective and Class. The Court ordered the Motion stand

submitted upon the filing of the revised notice and any other additional documentation. Dkt. 75

On June 25, 2024, Plaintiffs filed a Supplemental Declaration in Support of Plaintiffs' Motion for Preliminary Approval (Dkt. 76), with a revised Settlement Agreement (Dkt. 76-1, "Settlement") and revised Class and Collective Notice (Dkt. 76-2, "Notice").

## II.

## SETTLEMENT AGREEMENT TERMS

The proposed modified Settlement Agreement defines the Class and Collective as follows:

> "Class" means the combined class members as proposed in the Lawsuit, consisting of the following employees: All non-exempt workers employed by Defendants in the State of California at any time between August 1, 2018 to January 22, 2024.

> "FLSA Collective" means the combined collective members as proposed in the Lawsuit, consisting of the following employees: All non-exempt persons who are or have been employed by Defendants in the State of California at any time between August 1, 2019 to January 22, 2024.

> "Class Member" is any individual who worked for Defendants in the State of California as an hourly paid, non-exempt employee at any time between August 1, 2018 and January 22, 2024 ("the Class Period").

Settlement §§ I.A., I.B., I.E.

The parties contemplate 650 class members, and the settlement amount "will be increased, pro rata, should the number of Class Members increase." Dkt. 71-1, Plaintiffs' Memorandum of Points and Authorities ("Mem.") at 5.

The Settlement Agreement provides for a gross settlement fund of $1,150,000. Id. at 2. The fund will pay: (1) Class Representative Payments, which Defendants will not oppose up to $10,000, (2) Class Counsel Fees Payment, which Defendants do not oppose up to 33.33%  (i.e., $379,500), and Class Counsel Litigation Expenses Payment (up to $50,000), as approved by the Court, (3) the Settlement Administrator's reasonable fees and expenses (estimated at $12,500), as approved by the Court, and (4) any other fees or expenses incurred in implementing the terms of the agreement and securing dismissal of the Lawsuit as awarded by the Court. Mem. at 2, 5-6; Settlement §§ I.I, I.S. The remaining amount after the forgoing payments, constitutes the Net Settlement Amount, and will go to paying the Settlement Shares of Participating Class and Collective Members. Settlement §§ I.S, III.D.1.

Each Participating Class Member shall be eligible to receive a pro rata share of 84.16% of the Net Settlement Amount and each Participating FLSA Collective Member shall be eligible to receive a pro rata share of 15.84 percent of the Net Settlement Amount, each calculated by dividing the Net Settlement Amount by the total number of workweeks worked by each Class Member during the Class Period. Id. § III.D.1. Thus, a person eligible to be a Class and Collective Member will receive 100 percent of his or her possible recovery amount by opting into the FLSA claim and not excluding his or herself from the Class. No settlement funds revert to Defendants; any residual funds resulting from undeliverable or uncashed settlement checks will be disbursed to a suitable cy pres beneficiary, subject to Court approval. Mem. at 2.

The Settlement provides that the Settlement Administrator shall mail the Class Notice Packet to Class Members via first-class regular U.S. Mail. Settlement §§ III.E.2.g. Class Members will have 45 calendar days from the mailing of the Class Notice to Elect Not to Participate in the Settlement or

object to the Settlement. Id. § III.E.2.g. The FLSA Collective Members will have 90 calendar days after the date on which the Class and FLSA Notice Packets were mailed to complete and submit the Opt-In Form. Id. § III.E.2.c. Each Class Member who does not submit a timely and valid Election Not to Participate in the Settlement and each FLSA Collective Member who submits a timely and valid Opt-In Form, shall, upon entering of the Final Approval Order, be deemed to have released Defendants based on the claims in the operative Complaint. Id. § III.F.5.

The parties and counsel believe and warrant that this Settlement reflects a "fair, reasonable, and adequate settlement of the Lawsuit and have arrived at this Settlement and this Agreement through arms-length negotiations, taking into account all relevant factors, current and potential." Id. § III.H.7.

## III.

## CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS

When conditionally certifying a class for settlement purposes, the court "must pay undiluted, even heightened, attention to class certification requirements[.]" Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) (internal quotation marks and citation omitted). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled, and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 603 (E.D. Cal. 2015) (internal quotation omitted). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." Narouz v. Charter Commc'ns, LLC, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A. Rule 23(a) Requirements

7

Rule 23(a) requires a finding that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. ("Rule") 23(a).

### 1. Numerosity

Numerosity is met when "the class is so numerous that joinder of all members is impracticable[.]" Rule 23(a)(1). "To establish that joinder of all members is 'impracticable,' the plaintiff need not show that it would be 'impossible' to join every class member." Fossett v. Brady Corp., 2020 WL 7063586, at *4 (C.D. Cal. Oct. 2, 2020) (quoting Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996)). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980).

Here, as Plaintiffs estimate  roughly 650 similarly situated Class Members (Mem. at 17), the Court finds the numerosity requirement is met.

### 2. Commonality

The commonality requirement is met if "there are questions of law or fact common to the class[.]" Rule 23(a)(2). The commonality requirement is construed "permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. "'What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential

1  to impede the generation of common answers.'" Wal-Mart Stores, Inc. v.

2  Dukes, 564 U.S. 338, 350 (2011) (quoting Richard Nagareda, Class

3  Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

4      Here, Plaintiffs contend this action presents common questions of law

5  concerning Defendants' generally applicable policies and practices regarding

6  overtime compensation, minimum wage, and meal and rest periods. Mem. at

7  17-18. Plaintiffs allege "there are no individualized factual or legal issues for the

8  court to resolve other than the application of a formula to calculate each Class

9  Members' damages." FAC at 16. Given that Plaintiffs allege these policies and

10  practices were committed against the class uniformly (Mallison Decl. ¶14), the

11  Court concludes the commonality requirement is met.

12      3.  Typicality

13      Typicality is met when "the claims or defenses of the representative

14  parties are typical of the claims or defenses of the class[.]" Rule 23(a)(3). The

15  class representatives must "possess the same interest and suffer the same

16  injury" as the putative class. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156

17  (1982) (quotation omitted). This ensures that "the named plaintiff's claim and

18  the class claims are so interrelated that the interests of the class members will

19  be fairly and adequately protected in their absence." Id. at 158 n.13.

20      Here, both Plaintiffs and the putative class have experienced application

21  of the same allegedly unlawful policies and practices, and appear to have

22  suffered the same injuries, failure to be adequately compensated for time

23  worked. FAC at 14-16. As Plaintiffs allege their claims are "essentially

24  identical to all other non-exempt workers," (Mem. at 18), the Court finds the

25  typicality requirement is met.

26      4.  Adequacy of Representation

27

28

Lastly, the representative parties must "fairly and adequately protect the interests of the class." Rule 23(a)(4). Courts consider both whether "(1) [ ] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [ ] the named plaintiff and their counsel [will] prosecute the action vigorously on behalf of the class[.]" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (quoting Hanlon, 150 F.3d at 1020).

Plaintiffs and their counsel appear to be qualified and competent. Plaintiffs' counsel, Mallison & Martinez, are highly experienced in litigations of this type, having been "involved with over 300 wage and hour class and representative action cases" since the firm's foundation (Mallison Decl. ¶ 6), and Mr. Mallison has practiced "class and representative action on a near-exclusive basis for approximately 18 years" (Mallison Decl. ¶ 36). Also, no conflicts of interest appear to exist between Plaintiffs and the Class and Collective or unique defenses that apply only to Plaintiffs or would otherwise suggest they are inadequate representatives. Plaintiffs' counsel chose the named Plaintiffs as characteristic members of the Class and assert Plaintiffs have actively participated in the investigation of the issues in the case and the negotiations leading to settlement and have carried out all required tasks to help pursue the action, such as providing information, documents, insights, opinions, and necessary decisions. Mallison Decl. ¶ 14.[1] Therefore, Plaintiffs have satisfied the prerequisites of Rule 23(a).

**B. Rule 23(b)(3) Requirements**

Plaintiffs seek certification under Rule 23(b)(3), which requires a finding that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

---

[1] Mr. Mallison's declaration labels two consecutive paragraphs with the number 14. This citation refers to the first, on the middle of page 8.

superior to other available methods for fairly and efficiently adjudicating the controversy. Rule 23(b)(3).

1. <u>Predominance of Common Questions</u>

As to the predominance factor, the Supreme Court has explained that it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Hart v. Movement Mortg., LLC</u>, 2016 WL 11756816, at *8 (C.D. Cal. June 28, 2016) (quoting <u>Amchem Prods. v. Windsor</u>, 521 U.S 591, 623 (1997)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." <u>Hanlon</u>, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)). "When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." <u>Kamar v. Radio Shack Corp.</u>, 254 F.R.D. 387, 399 (C.D. Cal. 2008), <u>aff'd sub nom.</u> <u>Kamar v. RadioShack Corp.</u>, 375 F. App'x 734 (9th Cir. 2010). Class certification is usually appropriate where "liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." <u>Id.</u> "Common claims predominate where a company-wide policy governs how employees spend their time and/or how they are paid." <u>Fossett v. Brady Corp.</u>, 2020 WL 7063586, at *5 (C.D. Cal. Oct. 2, 2020) (collecting cases).

Here, Plaintiffs allege the claims arise out of employer policies and practices committed against the Class uniformly. Mallison Decl. ¶ 14.[2] As such, the Court finds the predominance factor is met.

/ / /

### 2. Superiority

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Fossett, 2020 WL 7063586, at * 6 (quoting Hanlon, 150 F.3d at 1023). Courts consider whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

Here, the large number of putative class members and the commonality of the issues presented supports a finding the class action procedure is superior to address the putative class members' claims. "If each class member filed an individual action, the potential recovery for each individual might be considerably less, given the attorneys' fees and costs that would be incurred by each individual member." Fossett, 2020 WL 7063586, at *6 (finding the superiority factor satisfied where there were 458 putative class members and uniform meal period and rest break policies were alleged). As such, a class action constitutes a superior method of adjudication, and Plaintiffs have satisfied the requirements of Rule 23(b)(3).

### IV.

### CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE

FLSA collective actions are not class actions and do not follow the requirements of class actions. See Campbell v. City of Los Angeles, 903 F.3d

---

[2] Mr. Mallison's declaration labels two consecutive paragraphs with the number 14. This citation refers to the second, at the bottom of page 8 and top of page 9.

1090, 1101 (9th Cir. 2018). A court has a "considerably less stringent"
obligation to ensure fairness of the settlement in a FLSA collective action than
a Rule 23 action because parties who do not opt in are not bound by the
settlement. See Hill v. R+L Carriers, Inc., 690 F. Supp. 2d 1001, 1009 (N.D.
Cal. 2010). "Plaintiffs seeking conditional certification of a collective action
under the FLSA have the burden to show that they are 'similarly situated' to
other class members." Brown v. Tetra Tech, Inc., 2024 WL 1462764, at *5
(E.D. Cal.) (citing Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1340 (N.D.
Cal. 2014)). Plaintiffs can show they are similarly situated by making
"substantial allegations, supported by declarations or discovery, that 'the
putative class members were together the victims of a single decision, policy,
or plan.'" Nen Thio, 14 F. Supp. 3d at 1340 (quoting Brewer v. Gen. Nutrition
Corp., 2013 WL 100195, at *3 (N.D. Cal. Jan. 7, 2013)). "This determination
is made based on a fairly lenient standard, and typically results in a conditional
certification." Nen Thio, 14 F. Supp. 3d at 1340.

Here, Plaintiffs allege members of the FLSA Collective were employed
in similar positions by Defendants and were subject to the same treatment of
routinely working more than 40 hours a per week, without being paid overtime
premium wages for hours worked in excess of 40 hours per week. FAC at 17-
18; Mem. at 16. Plaintiffs provide various declarations submitted by putative
class and collective members alleging they share similar issues of law and fact
regarding Defendants failure to pay for all hours worked. Mem. at 16; Dkt. 71-
6 ("Exhibit 4"). As such, given the lenient standard, the Court concludes that
Plaintiffs and FLSA Collective Members are "similarly situated" for the
purposes of preliminary certification.

**V.**

13

## PRELIMINARY APPROVAL OF SETTLEMENT

### A. <u>Preliminary Approval Under Rule 23(e)</u>

Class actions require the approval of the district court prior to settlement, and review of the proposed settlement of the parties generally proceeds in two phases. <u>True v. Am. Honda Motor Co.</u>, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010). "At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members." <u>Ramirez v. Merrill Gardens, LLC</u>, 2024 WL 3011142, at *6 (E.D. Cal. June 11, 2024) (citing <u>True</u>, 749 F. Supp. 2d at 1063). "[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." <u>In re Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quotation omitted). At the preliminary approval phase, "the Court need only decide whether the settlement is <u>potentially</u> fair." <u>Gruber v. Grifols Shared Servs. N. Am., Inc.</u>, 2023 WL 8610504, at *6 (C.D. Cal. Nov. 2, 2023) (citation omitted) (emphasis in original). "A full fairness analysis is unnecessary until the Court conducts the final fairness hearing." <u>Hollis v. Union Pac. R.R. Co.</u>, 2018 WL 6273014, at *5 (C.D. Cal. Mar. 6, 2018) (citation omitted).

The Ninth Circuit has described several factors a court may consider in evaluating the fairness of a proposed settlement:

[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount

14

offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting Hanlon, 150 F.3d at 1011). These may be considered in during both the preliminary and final approval processes. In re ZF-TRW Airbag Control Units Prods. Liab. Litig., 2023 WL 6194109, at *14 (C.D. Cal. July 31, 2023). "Each factor does not necessarily apply to every settlement, and other factors may be considered." Id.

The Federal Rule of Civil Procedure 23(e)(2) was amended in 2018 and requires that any settlement in a class action be approved "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether":

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

      (i) the costs, risks, and delay of trial and appeal;

      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

15

Rule 23(e)(2). This list of factors is not intended to displace any factors identified by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Rule 23(e)(2) advisory committee note to 2018 amendment; see also McKinney-Drobnis v. Oreshack, 16 F.4th 594, 609 (9th Cir. 2021) ("The amended Rule 23(e) did not 'displace' this court's previous articulation of the relevant factors, and it is still appropriate for district courts to consider these factors in their holistic assessment of settlement fairness."); Kim v. Allison, 8 F.4th 1170, 1178-79 (9th Cir. 2021) (directing district courts to consider both the factors previously identified by the Ninth Circuit and Rule 23(e)(2) when determining whether to approve a settlement). However, "the district court must show it has explored comprehensively all [Rule 23(e)(2)] factors." In re Apple Inc. Device Performance Litig., 50 F.4th 769, 782 (9th Cir. 2022).

Where, as here, "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not[] the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks omitted) (emphasis in original). In such circumstances, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted). Therefore, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 947.

On the instant Motion, the Court completes a preliminary examination of the settlement agreement, considering that "[a]lthough closer scrutiny is reserved for the final approval hearing, the showing at the preliminary approval stage – given the amount of time, money and resources involved in, for example, sending out new class notices – should be good enough for final approval." Wright v. Renzenberger, Inc., 2019 WL 8163480, at *3 (C.D. Cal. Nov. 25, 2019) (internal citations and alterations omitted). Ultimately, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Hart, 2016 WL 11756816, at *9 (quoting Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of S.F., 688 F.2d 615, 625 (9th Cir. 1982)).

1. Plaintiffs and Class Counsel's Adequacy

As discussed above in Section III.A.4., Plaintiffs and their counsel have adequately represented the Class. There is no evidence of a conflict between Plaintiffs or their counsel and other class members. Plaintiffs provided their Counsel with information, documents, insights, opinions, and necessary decisions to make this case successful. Mem. at 18. Further, Plaintiffs' claims are the same as other class members and they have every incentive to vigorously pursue them. See Mild v. PPG Indus., Inc., 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Plaintiffs' Counsel are likewise adequate, as they are highly experienced in litigations of this type, having been "involved with over 300 wage and hour class and representative action cases" since the firm's foundation. Mallison Decl. ¶ 6.

Further, "[t]he extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). Discovery can be both formal and informal. See Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011). Here, Plaintiffs and Plaintiffs' Counsel have "litigated this case for approximately two (2) years, . . .have a comprehensive understanding of damages and the possible issues were this case to proceed to trial[,]" and have "obtained the critical documents and data at issue in this case, including Defendants' payroll and timekeeping information, and performed detailed expert analysis thereon." Mallison Decl. ¶ 30. Plaintiffs' Counsel presented a "comprehensive damages model" to Defendants at mediation that culminated in the Settlement. Mallison Decl. ¶ 16. As such, the Court finds Plaintiffs and Plaintiffs' Counsel have adequately represented the putative class.

## 2. Arm's Length Negotiations

Courts evaluate the settlement process as well as the terms to which the parties have agreed to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th. Cir. 2009) (quoting Hanlon, 150 F.3d at 1027). A settlement is presumed fair if it follows sufficient discovery and genuine arm's-length negotiation. Brown, 2024 WL 1462764, at *6 (citing Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d, 964, 977 (E.D. Cal. 2012)). The presence and assistance of an experienced mediator in the settlement process "strongly suggests that the settlement is non-collusive." S.C. v. Buddi US LLC, 2024 WL 1459808, at * 6 (C.D. Cal. Apr. 1, 2024) (quoting Lalli v.

First Team Real Est.-Orange Cnty., 2022 WL 8207530, at *4 (C.D. Cal. Sept. 6, 2022)) (internal quotation marks omitted).

Three factors may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 947 (internal quotation marks and citations omitted).

Here, the Settlement appears to be negotiated at "arm's length." The parties were assisted in negotiations by mediator Judge Kenton, a retired judge of this District. Mem. at 10. Additionally, the Settlement is the result of a mediator's proposal. Mem. at 4; see Lusk v. Five Guys Enterprises LLC, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact that the parties engaged in mediation and that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

Further, as highlighted above, the settlement followed sufficient discovery. Plaintiffs "obtained the critical documents and data at issue in this case, including Defendants' payroll and timekeeping information, and performed detailed expert analysis thereon" (Mallison Decl. ¶ 30), and presented a "comprehensive damages model" to Defendants at mediation that culminated in the Settlement (Mallison Decl. ¶ 16).

Further, the Settlement does not contain a "kicker" or "reverter" clause that returns unawarded fees to the Defendants, rather than the putative class. Plaintiffs represent the Settlement does not allow for "reversion of any money

for to Defendants, and any residual funds resulting from uncashed settlement checks will be remitted to a court approved cy pres beneficiary." Mem. at 11.

However, at the final approval stage, the Court will closely examine the proposed distribution of the Settlement to attorneys' fees and expenses and the clear sailing arrangement described below, as this could shed light on the inquiry into whether the Settlement was negotiated at arm's length. See S.C. v. Buddi US LLC, 2024 WL 1459808, at *6 (C.D. Cal., Apr. 1, 2024).

### 3. Adequacy of Class Relief

In determining whether the class's relief is "adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C). At this stage, it appears the Settlement's relief is adequate.

### a. Costs, Risks, and Delay of Trial and Appeal

The $1,150,000 Settlement, affecting 650 employees, reflects a substantial outcome for Class Members and appears to be a fair compromise given the costs, risks, and delay of trial and appeal. The Settlement amount, according to the Court's calculations, represents about 39 percent of Plaintiffs' estimation of their maximum potential recovery, $2,946,524 (Mallison Decl. ¶ 26), which Plaintiffs indicate is an "admittedly a 'pie-in-the-sky' number that relies on liberal assumptions and fails to consider the numerous pitfalls of litigation such as prevailing on the merits and collecting on any judgment" or the "likely . . . delay[] by years of appeals" (Mem. at 13-14; see also Mallison Decl. ¶ 31). This recovery is well within the range of possible approval. See Freeze v. PVH Corp., 2020 WL 5769085, at * 7 (C.D. Cal. July 1, 2020)

(approving settlement amount in wage and hour action that represented 24 percent of the estimated damages); Brown v. CVS Pharmacy, Inc., 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving settlement that represented 27 percent of possible recovery); Stovall-Gusman v. W.W. Granger, Inc., 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving a settlement amount in wage and hour action of approximately 10% of what the class might have been awarded had they succeeded at trial, although recognizing the award was on "the low end of the spectrum").

Plaintiffs indicate "Defendants contest liability in this action, are represented by talented counsel, and are prepared to vigorously defend against these claims if the action is not settled." Mallison Decl. ¶ 35. Plaintiffs describe the meal period claim based upon Defendants' time records and failure to pay long haul travel time as the primary viable claims and acknowledge "there is no guarantee of success as Defendants are permitted to overcome presumptions by submitting evidence that such meals were actually provided or the time spent traveling to worksites is not compensable under federal and state labor laws." Mem. at 14. Plaintiffs are also aware that, even if they stood to prevail on wage and hour violation claims, they faced legal obstacles in obtaining other damages and penalties derivative thereof, "[f]or example, the possibility existed that the Court would decline to enter a finding of 'willfulness' with regard to Defendants' untimely payment of wages to severed employees, thus foreclosing any recovery under Labor Code section 203," or could decline "to find that there was any 'injury' to Class Members resulting from allegedly inaccurate wage statements." Id. at 11.

The elimination of these risks and delay suggests the Settlement's adequacy. See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

### b. Effectiveness of Proposed Method of Distributing Relief

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. Here, the proposed method of distributing is not unduly demanding, as Participating Class Members do not need to take any action to receive their share of the settlement for the Class claims via check in the mail. Notice at 5.

### c. Attorney Fee Award

The next factor in the adequacy analysis consists of "the terms of any proposed award of attorney's fees, including timing of payment[.]" Rule 23(e)(2)(iii). Under this factor, the relief "to class members is a central concern." Rule 23(e)(2)(C) advisory committee's note to 2018 amendment. In considering the proposed award of attorney fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: (1) when counsel receives a disproportionate distribution of the settlement, (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for agreed-upon attorney fees, and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. Briseño v. Henderson, 998 F.3d 1014, 1023 (9th Cir. 2021).

As discussed above in Section V.A.2., the Settlement does not contain a "kicker" or "reverter" clause. Additionally, the timing appears appropriate. Where class counsel is paid before class members, "[i]n theory, this could cast a slight shadow on the proposed fee and cost arrangements." Carter v. Vivendi

Ticketing US LLC, 2023 WL 8153712, at *8 (C.D. Cal. Oct. 30, 2023). Here, the Settlement indicates Class Counsel will determine the date of distribution of fees and/or costs to Class Counsel on or after the date the Settlement Administrator will release the total amount of payments due to Plaintiffs and Participating Class Members. Settlement § III.E.4. However, the parties agreed Defendants will not oppose Class Counsel's fee award up to 33.33 percent of the Gross Settlement Amount, plus an additional amount for reasonable costs (Settlement § III.B.2), which causes two concerns for the Court.

First, ordinarily, "25% of the fund [i]s the 'benchmark' for a reasonable fee award." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942-43. In deciding whether "'special circumstances' justify[ ] a departure" from the benchmark, id. at 942, courts typically consider (1) the results achieved, (2) the risk of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiff, and (5) awards made in similar cases. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002). Plaintiffs have not, at this stage, made a showing of "special circumstances" to justify departure from the benchmark. However, Plaintiffs' counsel indicate they "will provide justification for the amount requested" at the final approval hearing, and its "[l]odestar in the final approval motion is expected to exceed $379,500." Mallison Decl. ¶ 39. At the preliminary approval stage, with the understanding Plaintiffs' counsel intend to make such a showing, and also provide sufficient information to perform a lodestar analysis upon their Motion for Final Approval, the Court finds that Plaintiffs' requested fees are sufficiently reasonable. See Campos v. Converse, Inc., 2022 WL 1843223, at *10 (C.D. Cal. Apr. 21, 2022) (finding an attorneys' fees request for one-third of the settlement amount reasonable at the preliminary approval stage, subject to further scrutiny at the final stage); see

also <u>Vizcaino</u>, 290 F.3d at 1050 ("Calculation of the lodestar, which measures
the lawyers' investment of time in the litigation, provides a check on the
reasonableness of the percentage award."); <u>In re Bluetooth Headset Prods.</u>
<u>Liab. Litig.</u>, 654 F.3d at 943 (encouraging a "comparison between the lodestar
amount and a reasonable percentage award").

Second, the provision constitutes a clear sailing arrangement, as
Defendants agree not to oppose a specified award of attorneys' fees, which can
sometimes be a subtle sign of collusion. <u>See</u> <u>Briseño</u>, 998 F.3d at 1022. "[T]he
very existence of a clear sailing provision increases the likelihood that class
counsel will have bargained away something of value to the class." <u>In re</u>
<u>Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d at 948 (quoting <u>Weinberger v.</u>
<u>Great N. Nekoosa Corp.</u>, 925 F.2d 518, 525 (1st Cir. 1991). However, the clear
sailing arrangement is not a "death knell" for approval, but rather means that
the Court must scrutinize the Settlement for signs that the fees counsel requests
are unreasonably high. <u>McKinney-Drobnis</u>, 16 F.4th at 610. Specifically, the
Court must "peer into the provision and scrutinize closely the relationship
between attorneys' fees and benefit to the class, even when the settlement has
been negotiated with a neutral mediator before turning to fees." <u>Kim</u>, 8 F.4th
at 1180 (internal quotation omitted). Considering the benefit the Settlement
provides to Class Members, at this time the clear sailing arrangement does not
raise sufficient collusion concerns to deny preliminary approval, but counsel
should thoroughly address this issue at the final approval stage. <u>See</u>, <u>S.C.</u>, 2024
WL 1459808, at *8; <u>Gruber</u>, 2023 WL 8610504, at *9 (granting preliminary
approval but warning parties that it will further scrutinize proposed 33% award
for attorneys' fees and the agreement not to oppose).

d. <u>Any Agreement Made in Connection with the Proposal</u>

The Court must also consider whether there is "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(iv). The parties have identified no agreement other than the proposed Settlement.

### 4. Equitable Class Member Treatment

The final Rule 23(e) factor examines whether class members are treated "equitably relative to each other." Rule 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Rule 23(e)(2)(D) advisory committee's note to 2018 amendment. Here, payments to the Settlement Class are to be distributed from the Net Settlement Amount on a pro rata basis, calculated by dividing the Net Settlement Amount by the total number of workweeks worked by each class member during the Class Period. Settlement § III.D.1. Additionally, the Settlement amount is subject to an "Escalator Clause," under which the Gross Settlement Amount, will be increased, pro rata, should the number of Class Members increase by more than 650 members estimated at the time of execution. Mem. at 5. Accordingly, the Settlement treats Class Members equitably relative to each other.

### 5. Incentive Awards

Plaintiffs' counsel also intend incentive awards for Plaintiffs, which Defendants do not oppose up to $10,000 for each Plaintiff. Mallison Decl. ¶ 23; Settlement § III.F.1. The trial court has discretion to award incentives to the class representatives. Thomas-Byass v. Michael Kors Stores (CA), Inc., 2016 WL 11506717, at *12 (C.D. Cal. Sept. 19, 2016) (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) as amended (June 19, 2000); Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1329 (W.D. Wash.

2009)). Incentive awards intended to compensate class representatives for work undertaken on behalf of a class are "fairly typical in class action cases." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (quoting Rodriguez, 563 F.3d at 958). "Incentive awards in this district typically range from $3,000 to $5,000." S.C., 2024 WL 1459808, at *8 (citing In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig., 295 F.R.D. 438, 470 (C.D. Cal. 2014) (collecting cases)). A $5,000 payment is "presumptively reasonable." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 266 (N.D. Cal. 2015). When evaluating the reasonableness of incentive awards, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff spent pursing the litigation. Staton, 327 F.3d at 977.

The Court notes, based on its own calculations, the average gross estimated award to a Participating Class and Collective Member (an individual who does not exclude themselves from the Class and affirmatively opts-in to the Collective) is $1,089.23. Plaintiffs justify the $10,000 incentive award by arguing "the Class Representative[s] have represented [their] colleagues and invested significant time and energy into this case, risking [their] reputation[s] and the threat of retaliation from future employers." Mem. at 12. Further, Plaintiffs "provid[ed] [Counsel] with information, documents, insights, opinions, and necessary decisions to make this case successful." Id. at 18. Plaintiffs have "actively participated in the investigation of the issues in this case and negotiations leading to the settlement" (Mallison Decl. ¶ 34) and engaged in "numerous discussions" with their counsel (id. ¶ 33).

At this preliminary stage, the Court will approve the proposed incentive award, but cautions Plaintiffs that evidence demonstrating their contributions

to the litigation will be required to approve this amount at the final approval hearing. See Gonzalez v. CoreCivic of Tenn., LLC, 2020 WL 1475991, at *12-13 (E.D. Cal. Mar. 26, 2020) (preliminarily approving $15,000 and $10,000 incentive payments while cautioning counsel to provide clear and specific evidence at the final approve stage demonstrating significant contributions by the named plaintiffs); Smothers v. NorthStar Alarm Servs., LLC, 2020 WL 1532058, at *13 (E.D. Cal. Mar. 31, 2020) (finding $10,000 service award to each class representative reasonable "in light of plaintiffs' extensive time commitment, as laid out in their sworn declarations").

/ / /

/ / /

## B. **FLSA Component**

"FLSA settlements must comprise 'a fair and reasonable resolution of a bona fide dispute.'" Brown, 2024 WL 1462764, at *10 (citing Kerzich v. County of Tuolumne, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018). A dispute is "bona fide" if there are "legitimate questions" about the existence and extent of a defendant's FLSA liability. Brown, 2024 WL 1462764, at *10 (citing Kerzich, 335 F. Supp. 3d at 1184; Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)). "A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute." Kerzich, 335 F. Supp. 3d at 1184. "However, if a bona fide dispute between the parties exists, courts will often consider many of the same factors that guide preliminary certification of Rule 23 class actions in evaluating the fairness of the FLSA settlement." Brown, 2024 WL 1462764, at *10 (citing Maciel v. Bar 20 Dairy, LLC, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018)).

The Court finds that this settlement represents a reasonable resolution of a bona fide dispute. As discussed above in Section V.A.3.a., Plaintiffs indicate Defendants "contest liability in this action, are represented by zealous counsel, and are prepared to vigorously defend against these claims if the action is not settled." Mallison Decl. ¶ 32. It appears Plaintiffs' Counsel considered failure to pay long-haul travel to be Plaintiffs' primary viable federal claim and recognized that Defendants would be permitted to overcome presumptions by submitting evidence that time spent traveling to worksites would not be compensable under federal laws. Id. ¶ 26.

Moreover, the amended Settlement is fair and reasonable. A release of FLSA claims in exchange for no consideration is not a "fair and reasonable" resolution of a dispute. Thompson v. Costco Wholesale Corp., 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017). Plaintiffs' amended Settlement reflects that each Participating FLSA Collective Member is eligible to receive a pro rata share of 15.84 percent of the Net Settlement Amount. Settlement § III.D.1. At the June 6, 2024 hearing on this Motion, Plaintiffs' Counsel represented this percentage reflected the proportion of the estimated maximum recovery assigned to the FLSA claim.

Given that there is a bona fide dispute as to Plaintiffs' FLSA claim, Plaintiffs have clarified the consideration given for releasing the claim, and for the reasons discussed above in Section V.A.3.a., the Court finds the Settlement is fair and reasonable resolution of the FLSA claim.

## VI.

## APPROVAL OF THE CLASS AND COLLECTIVE NOTICE

Under Federal Rule of Civil Procedure 23(c)(2)(B), the Court must direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." However, actual notice is not required. <u>See</u> <u>Silber v. Mabon</u>, 18 F.3d 1449, 1454 (9th Cir. 1994). The notice must also include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Rule 23(c)(2)(B).

In an FLSA collective action, "'the court must provide potential plaintiffs accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" <u>Thompson</u>, 2017 WL 697895, at *8 (quoting <u>Adams v. Inter-Con Sec. Sys.</u>, 242 F.R.D. 530, 539 (N.D. Cal. 2007)).

> In light of this requirement, and because of the inherent differences between Rule 23 class actions and FLSA collective actions, courts considering approval of settlements in these hybrid actions consistently require class notice forms to explain: '(1) the hybrid nature of th[e] action; (2) the claims involved in th[e] action; (3) the options that are available to [Class and Collective Action Members] in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collective action aspects of the settlement, and (4) the consequences of opting in to the FLSA collective action, opting out of the Rule 23 class action, or doing nothing.'

<u>Thompson</u>, 2017 WL 697895, at *8 (quoting <u>Pierce v. Rosetta Stone, Ltd.</u>, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013)).

The proposed manner of notice appears adequate here, as Plaintiffs propose the putative class receive direct mail notice, "a type of notice program courts routinely approve." <u>S.C.</u>, 2024 WL 1459808 at *9. In prior discussions, the Court raised concerns with the parties regarding the clarity and accuracy of the proposed class/collective notice, and upon reviewing the revised Notice, the Court finds it remedies some deficiencies identified by the Court, and conditionally approves the Notice **subject to remedying the remaining issues identified below**. Plaintiffs are cautioned that errors in the Notice could result in objections to and/or a denial of any Motion for Final Approval.

First, the hybrid nature of the settlement is not consistently accurately characterized throughout the Notice. Frequently, general language only applicable to the Class is used. For example, where the Notice reads ". . . the portion of the Gross Settlement Amount that remains . . . will be distributed to those members of the Settlement Class who do not request to be excluded from the Settlement" (Notice at 2), it fails to indicate this amount will be distributed to those eligible for the FLSA Collective who opt in as well.

Next, with respect to the Release of Claims section, the word "release" appears to be missing. <u>See id.</u> at 7 ("you, on behalf of yourself and your respective heirs, . . . and assigns, any and all claims . . . against the Released Parties . . ."). Importantly, the types of claims (FLSA or California state law) released based on putative class/collective members' actions are not accurately characterized in the Release of Claims section. The section appears to indicate that "[u]nless you exclude yourself from the Settlement" (<u>id.</u>), an individual releases both Class and Collective claims, implying individuals must take an action or will release both FLSA and California state law claims. However, according to the Settlement, an individual who does nothing would not release

FLSA Collective claims. Settlement III.F.7 (Release of Claims is binding on "FLSA Collective members who timely submit a valid Opt-In Form").

Additionally, the types of claims released based on putative class/collective members' actions are not consistently accurately characterized throughout the Notice. See e.g., Notice at 4-5 ("If you do nothing, you will be bound by the terms of the Settlement and have released any and all of the Released Claims against any and all of the Released Parties. . ."). Further, occasionally the types of claims released by an illustrated option are not reflected at all, or only reflected with respect to the Class.

The Notice also does not include the definition of the FLSA Collective or address the difference in eligibility between the FLSA Collective and the Class. Additionally, the Notice does not include every claim involved in this action in its description of the alleged violations. Further, the Notice does not indicate what is required to object to the FLSA collective action or to the entire hybrid settlement, such as whether a putative collective member must opt in.

Finally, the FLSA opt-in authorization form does not include the date by which the recipient needs to return the form to receive the FLSA Collective share of the Settlement, explain what claims are released by submitting the form, or indicate the additional settlement payment amount the individual is estimated to receive by opting in and that he or she will not receive this amount if he or she does not fill out the form.

The Court also notes there are typos in the Notice and Settlement. See Notice at 1 ("Plain tiffs"), ("unfair competition law"); see also Settlement § III.F.6. ("MemberClas"), § III.D.1. ("Setttlment").

The parties must adequately remedy these deficiencies and file a revised version of the full notice **within 14 days** of this Order.

Subject to the changes identified above, the Court approves the form and method of the Notice.

## VII.

## APPOINTMENT OF THE CLASS REPRESENTATIVES, CLASS COUNSEL AND SETTLEMENT ADMINISTRATOR

For the reasons discussed above in Sections III.A.4. and V.A.1., the Court finds that Plaintiffs have adequately represented the interests of the Class by providing information, documents, opinions to their counsel and substantial time and effort in this litigation. As such, Plaintiffs shall be appointed as class representatives ("Class Representatives").

Similarly, as discussed above, Plaintiffs' counsel, Mallison & Martinez, are experienced labor and employment litigators, and have litigated this case for two years, investigating and negotiating the settlement in this matter. Accordingly, they are appointed as class counsel ("Class Counsel").

Finally, the Plaintiffs propose, unopposed, that the Court appoint Phoenix Class Action Administration Solutions to serve as the Settlement Administrator and anticipate fees that shall not exceed $12,500. Mem. at 2, 8; Mallison Decl. ¶ 40. Plaintiffs attached Pheonix's bid to administer this Settlement. Dkt. 71-5. "[F]ederal courts routinely approve Phoenix as settlement administrator." S.C., 2024 WL 1459808, at *9 (citing Lagunas v. Young Adult Inst., Inc., 2024 WL 1025121, at *5 (N.D. Cal. Mar. 8, 2024); Botonis v. Bimbo Bakeries USA, Inc., 2024 WL 100545, at *13 (E.D. Cal. Jan. 9, 2024); Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc., 2021 WL 4133860, at *4 (N.D. Cal. Sept. 10, 2021)). Accordingly, the Court shall appoint Phoenix as Settlement Administrator.

## VIII.

# CONCLUSION

As set forth above, the Court CONDITIONALLY GRANTS Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Specifically:

    a.   The proposed Rule 23 Class and FLSA Collective are certified for settlement purposes.

    b.   The named Plaintiffs, Martin Estrada and Omar Estrada, are appointed as Class Representatives for settlement purposes.

    c.   Plaintiffs' Counsel, Mallison & Martinez, are appointed as Class Counsel for settlement purposes.

    d.   Phoenix Class Action Administration Solutions is appointed to act as the Settlement Administrator.

    e.   Plaintiffs must submit a compliant, corrected, revised notice packet within **ten (10) days** of this Order.

2. A Final Approval Hearing is set for January 30, 2025, at 10:00 a.m. in Courtroom 6A of the Ronald Reagan Federal Building and United States Courthouse, located at 411 West Fourth Street, Santa Ana, California. The deadline for Plaintiffs to file the Motion for Final Approval is December 19, 2024. The deadline to file any Opposition or Objection to the Motion for Final Approval is January 2, 2025. The deadline for Plaintiffs to file any reply is January 9, 2025. All other dates are vacated.

IT IS SO ORDERED.

DATED: August 23, 2024

_____
JOHN D. EARLY
United States Magistrate Judge